## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BROSE NORTH AMERICA, INC.,
and BROSE MEXICO, S.A. de C.V.,

              Plaintiffs,

v.

STAMPED PRODUCTS, INC.,

              Defendant.

_____/

CASE NO. 06-CV-12072

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## <u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

Before the Court is Defendant's August 8, 2006 (1) Motion to Dismiss for Lack of Personal Jurisdiction, (2) Motion to Dismiss under FRCP 12(b)(3) pursuant to a Forum Selection Clause, and (3) Motion to Transfer Venue. (Docket No. 3). Plaintiffs filed their Response on September 11, 2006. (Docket No. 5). Defendant filed its Reply on September 29, 2006. (Docket No. 6). In its Reply, Defendant admitted that the Court had personal jurisdiction over it. Therefore, the only motion before the Court is Defendant's (1) Motion to Dismiss pursuant to a Forum Selection Clause and (2) Motion to Transfer Venue. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss.

## I.      BACKGROUND

Plaintiffs Brose North America, Inc. and Brose Mexico S.A. de C.V. (collectively "Brose") bring this breach of contract and indemnity action against Stamped Products, Inc. ("SPI") arising out of the delivery of allegedly defective lift arms.

1

Plaintiff Brose North America, Inc. is a Michigan corporation with its principal place of business in Auburn Hills, MI. (Compl. ¶ 1). Plaintiff Brose Mexico, S.A. de C.V. is a Mexican Corporation with its principal place of business in Queretaro, Mexico. (Compl. ¶ 2). Defendant SPI is an Alabama corporation with its principal place of business in Gadsden, Alabama. (Compl. ¶ 3). Brose is a supplier of technologically advanced components and systems for automobile doors and seats for automobile manufacturers including Ford Motor Company ("Ford"). (Compl. ¶ 7).

On November 4, 2002, Brose entered into an agreement with SPI for SPI to provide lift arms to be ultimately incorporated into Ford automobiles. (Compl. ¶ 8). In August 2005, Brose received a complaint from Ford that the lift arms manufactured by SPI and supplied to Brose were bending when the window was activated. (Compl. ¶ 9). An analysis of the defective lift arms revealed that the lift arms were prematurely failing due to the lift arms being comprised of the wrong composition of steel, specifically low carbon content. (Compl. ¶ 10).

The original material specifications for the lift arms were contained on a drawing. (Compl. ¶ 11; Ex. 2). A note on the specifications indicated that the material to be used was contained on the drawing itself "unless otherwise specified." At that time, the material specified on the drawing under Ford Engineering Material Specification "A250" included a carbon component of 0.09 maximum. (Compl. ¶ 12). No later than 1999, the Ford Engineering Material Specification was revised to specification "A333," which cross-referenced another specification "A366M." (Compl. ¶¶ 13-14; Ex. 3).

SPI stated in its original Part Submission Warrant that it would use "HSLA Type B GR 340" material for the product. (Compl. ¶ 15). On or about May 2002, SPI requested permission

2

from Brose to switch specifications from A366M to A 653/A 653 M instead. Brose approved this modification as long as SPI employed specification HSLA Type B GR 340. (Compl. ¶ 19). The specifications for A 653/A provided that the chemical carbon composition to be 0.02 to 0.15% by weight if using a Type B material. (Compl. ¶ 20). However, in January 2005, SPI changed to "1006 CS Type B" material instead of HSLA Type B GR 340 without notifying Brose. (Compl. ¶ 16). However, if using a "CS Type B" material, the specifications provided that the chemical carbon composition be between 0.02% to 0.15% by weight. (Compl. ¶ 21).

On June 16 and 17, 2005, SPI shipped lift arms consisting of mechanical yield readings 26,500 psi and carbon composition of 0.005% carbon by weight, rather than specified the 50,000 psi minimum and carbon composition of 0.02% to 0.15% by weight. (Compl. ¶ 22). Plaintiff alleges that these particular lift arms prematurely failed. (Compl. ¶ 23). Due to the failure of the lift arms, Ford maintains that it incurred approximately $900,000 in material, repair, and replacement costs for the defective cross arm regulators. (Compl. ¶ 24). In response to these costs, Ford issued a supplier chargeback to Brose in the amount of $898,393.90. (Compl. ¶ 25). Plaintiffs claim that in addition to the chargeback cost, it will incur $437,347.54 in expenses from scrapping materials, expediting new product, and rework. (Compl. ¶ 26).

Brose brings the following state law counts against SPI:

I.      Breach of Contract
II.     Contractual Indemnity
III.    Common Law Indemnity

For the breach of contract claim, Brose alleges that under its contract with SPI, SPI was required to provide lift arms that were merchantable, free from defects in workmanship and materials, and in strict compliance with Brose's specifications. (Compl. ¶ 29).

3

For the contractual and common law indemnity claims, Brose claims that its Purchase Order with SPI contains an indemnification clause if Brose should suffer any damages from its supplier. (Compl. ¶ 33-35).

## II.   ANALYSIS

Defendant argues that the Court should dismiss Plaintiff's Complaint under FRCP 12(b)(3) due to the Purchase Order's explicit forum selection clause. The applicable clause of Brose's Purchase Order reads:

> For the interpretation, compliance with, and enforcement of this Agreement, both parties agree to submit to the laws and Courts of the City of Queretaro, State of Queretaro, Mexico, and waive the right of trial in any other court jurisdiction which they might be entitled to because of current or future domicile.

(SPI Br. p. 7; Ex. B).

A forum selection clause in an international agreement should control absent a strong showing that it should be set aside. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995) (citation and internal quotations omitted). The Supreme Court has held that courts should "enforce the forum selection clause specifically unless. . . .[the party can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The presumptive validity of a forum selection clause can be overcome if a party can show either that (1) trial in the contractual forum would be so gravely difficult and inconvenient that the party will for all practical purposes be deprived of its day in court or (2) enforcement would contravene a strong public policy of the forum state. *Id*. at 18, 15 (quotations omitted).

4

Plaintiffs rely upon *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), and *Kerabo v. S.W. Clean Fuels Corp.*, 285 F.3d 531 (6th Cir. 2002), for the proposition that where venue is proper, 28 U.S.C. § 1404, and not a contractual forum selection clause, provides the basis for granting a motion to dismiss for improper venue. (Pl. Br. p. 11). Plaintiffs further assert that Defendant does not seek enforcement of the forum selection clause, rather only motions the Court to transfer venue to a district court in Alabama. (Pl. Br. p. 11-12). However, the aforementioned principles cited by Plaintiffs do not apply where the forum selection clause in the contract names a foreign jurisdiction.

In *Shell*, the Ohio plaintiffs brought suit seeking to rescind their investment contracts against British defendants. 55 F.3d at 1228. The British defendants moved to dismiss the suit for improper venue under FRCP 12(b)(3) due to forum selection clauses in the investment contracts that gave exclusive jurisdiction to English courts. *Id*. The court held that the plaintiffs' complaint should be dismissed since the plaintiffs could not show that the forum selection clause, under *M/S Bremen*, was either unreasonable or unjust, deprived the plaintiffs of their substantive rights to litigate the claim, or violated a strong Ohio public policy. *Id*. at 1230-32.

In *Kerabo*, the Michigan plaintiffs brought suit against a California defendant for various state law contract and tort claims. 285 F.3d at 533. The defendant then removed the case to federal court on the basis of diversity. *Id*. The defendant next sought (1) to dismiss the suit under FRCP 12(b)(3) because the forum selection clause of the contract established venue in California or (2) to transfer venue to the Southern District of California pursuant to § 1404(a). *Id*. Relying upon *Ricoh*, the court essentially held that since venue was proper under § 1441(a) (removal),

the criteria of § 1404(a), with the forum selection clause being only one factor, was the

appropriate mechanism for evaluating proper venue for the case. *Id*. at 537-38.

However, the Sixth Circuit in *Kerabo* expressly recognized that the *M/S Bremen-Shell*

analysis applies where the forum selection clause provides for a foreign jurisdiction:

> [*Shell*], however, did not raise and we did not address the federal venue statutes or the
> question of whether Rule 12(b)(3) was the proper vehicle by which to raise the forum-
> selection clause. Significantly, *the contractually agreed forum in* Shell *was not within the
> jurisdiction of any United States district court*, and a motion to transfer would therefore
> not have been available.

*Id*. at 535-36 (emphases added). In this instance, the Purchase Order contained a provision that

gave exclusive jurisdiction to Queretaro, Mexico for the purposes of litigating any disputes

under the contract. The distinction in *Kerabo* is that since venue was otherwise proper in a

federal district court in Michigan, the defendant's assertion of the forum selection clause would

just have become another factor to consider when the court considered a motion to transfer

venue under § 1404(a). *Id*. at 537-38. Reading *Shell* and *Kerabo* together, the criteria for

evaluating a motion under § 1404(a) does not apply in the instant case, since a United States

district court does not have jurisdiction over the Mexican forum named in the contract, therefore

a party does not have an option to transfer venue under § 1404(a).

Nor have Plaintiffs made any argument that under *M/S Bremen* the forum selection clause

was unreasonable or unjust, was a product of fraud or overreaching, that a trial in Mexico would

effectively deprive Plaintiffs of their day in court, or that the agreement's enforcement would

violate a strong public policy of the forum. In fact, the forum selection clause was contained in

Plaintiffs' own purchase order. Therefore, the Court pursuant to *M/S Bremen-Shell* GRANTS

Defendant's Motion to Dismiss based on the Forum Selection Clause.

**III.     CONCLUSION**

The Court **GRANTS** Defendant's FRCP 12(b)(3) Motion to Dismiss.


**SO ORDERED.**



s/Paul D. Borman                                    
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 21, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 21, 2006.



s/Denise Goodine                                    
Case Manager